UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 13 C 2207<br>) |
| ZURICH AMERICAN INSURANCE COMPANY, | ) Judge Rebecca R. Pallmeyer<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On September 19, 2007, William Kelly suffered serious injuries while descending a stairway in Hawthorne, California. Kelly sued F. H. Paschen, Inc., the general contractor for a construction project on the stairway, in a Los Angeles County court. In this lawsuit, Plaintiff Westchester Fire Insurance Company, Paschen's excess insurance carrier, alleges that Paschen's primary insurer, Defendant Zurich American Insurance Company, wronged Plaintiff by failing to settle Kelly's case within the primary policy limits of $1 million and by failing to notify Plaintiff of the pending litigation. Westchester seeks to recover some $700,000 it paid on a judgment that exceeded Zurich's policy limit. Zurich moves to dismiss the case under Fed. R. Civ. P. 12(b)(6) or for a transfer of venue pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, Zurich's Motion to Dismiss [11] is denied, and Zurich's Motion to Transfer [14] is granted.

## BACKGROUND

Westchester is a Pennsylvania corporation with its principal place of business in that state. Zurich, an Illinois corporation, has its principal place of business in Schaumburg, Illinois. (Compl. [1] ¶¶ 4, 5). Zurich issued a primary commercial general liability insurance policy to Paschen, an Illinois corporation, for the period from October 1, 2006 through October 1, 2007, with a $1 million per occurrence limit of liability. (Compl. ¶¶ 6, 7). Westchester issued an

umbrella policy to Paschen for the same period of time, with a policy limit of $25 million. (Compl. ¶¶ 8, 9.)

On June 26, 2008, William Kelly filed suit against Paschen for injuries he suffered in a stairwell in Hawthorne, California, where Paschen was performing construction work. (Compl. ¶¶ 10, 13, 14.) Kelly later named additional Defendants[1], and, on July 10, 2009, filed a statement claiming he had suffered damages of $ 2.5 million. (Compl. ¶¶ 17, 18, 19.) Paschen notified Zurich, but not Westchester, of the lawsuit, and Zurich appointed its captive law firm, Pollard Mavredakis Cranert Crawford & Stevens ("Pollard"), located in California, to defend Paschen against Kelly's claim and the cross-claims filed by other Defendants. (Compl. ¶¶ 15, 21, 22.)

In September 2010, the parties engaged in mediation. Kelly made a demand for $1.25 million, exclusive of liens. (Compl. ¶¶ 23, 24.) The mediator proposed a settlement in the amount of $975,000, inclusive of the lien, in which Paschen and co-defendant BPI would each be responsible for just $300,000. (Compl. ¶ 25.) Paschen's lawyers did not respond to that proposal (Compl. ¶ 26), but BPI settled with Kelly for $375,000. (Compl. ¶ 28.) Then on October 14, 2010, Kelly served Paschen and co-Defendant Lynx with a settlement demand of $1 million (Compl. ¶ 29) and co-Defendant HED offered to settle its cross-complaint against Paschen for $202,863.87. (Compl. ¶ 32.)

Kelly's trial began on November 1, 2010. Zurich notified Westchester of the lawsuit for the first time on November 17, 2010. (Compl. ¶¶ 33, 34.) The following day, the jury returned a verdict of $1.6 million, of which Paschen was liable for $1,310,789.70. (Compl. ¶¶ 35, 36.) Several months later, on April 11, 2011, the court entered judgment against Paschen in the amount of $411,848.03 on co-Defendant Fields' cross-complaint. (Compl. ¶ 38.) Westchester complied with Paschen's demand and paid $727,820, the amount not covered under Zurich's

---

[1] Kelly added additional defendants Harley Ellis Deveraux ("Harley"), Fields Deveraux Architects and Engineers ("Fields"), BPI Inspection Services ("BPI"), Kuryl Corporation, Lynx Iron Corporation ("Lynx"), and R & D Drywall ("R&D"). (Compl. ¶¶ 17, 18.)

policy. (Compl. ¶ 40.) Plaintiff seeks to recover that amount in this lawsuit. Defendant Zurich has moved to dismiss the case for failure to state a claim or, in the alternative, for transfer of venue.

## ANALYSIS

I. **Motion to Dismiss**

    A. **Applicable Choice of Law**

Westchester filed this action in the Northern District of Illinois and argues that Illinois law applies. Zurich insists that the law of California controls this action. Because the parties appear to agree that there are actual conflicts between the laws of the two states (*see* Zurich's Mem. in Supp. of its Mot. to Dismiss [12], hereinafter, "Def.'s Mot. to Dismiss," at 5), the court is required to resolve the matter[2] and concludes, for the reasons explained here, that Zurich has the better of the argument.

There appear to be two conflicts: First, some Illinois courts have recognized the possibility that a direct common law duty may run from primary insurers to excess insurers, *Schal Bovis, Inc. v. Cas. Ins. Co.*, 314 Ill. App. 3d 562, 569, 732 N.E.2d 1082, 1088 (1999), whereas California courts do not recognize such a duty. *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal. 3d 912, 918, 610 P.2d 1038, 1041-42 (1980). Second, Illinois courts have recognized that an "opportunity" may be sufficient to invoke a duty to settle within policy limits, *LaRotunda v. Royal Globe Ins. Co.*, 87 Ill. App. 3d 446, 454, 408 N.E.2d 928, 935 (1980), while California courts hold that no such duty exists absent a formal settlement offer or demand. *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 877-78, 110 Cal. Rptr. 511 (1973).

In determining which state law applies, the court looks to the choice-of-law rules of the state in which it sits—in this case, Illinois. *Fed. Ins. Co.*, 933 F. Supp. 2d at 1070. The Illinois Supreme Court has adopted the choice-of-law analysis set forth in the Second Restatement of

---

[2]     Absent a conflict, there is no need for the court to make this determination. *Fed. Ins. Co. v. J.K. Mfg. Co.*, 933 F. Supp. 2d 1065, 1070 (N.D. Ill. 2013).

Conflict Laws. *Lazzara v. Howard A. Esser, Inc.*, 622 F. Supp. 382, 384 (N.D. Ill 1985) (citing *Mitchell v. United Asbestos Corp.*, 100 Ill. App. 3d 485, 426 N.E.2d 350 (1981)). That approach "contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6" of the Restatement, set forth as follows:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 164, 879 N.E.2d 893, 903 (2007) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)). The principles of § 6 are examined along with "relevant contacts." *Townsend*, 227 Ill. 2d at 164, 879 N.E.2d at 903. For tort claims, the relevant contacts include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145. For contracts, those relevant contacts are "(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 771 (7th Cir. 2013) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188).

### 1. Presumptively Applicable Law: Tort or Contract?

Westchester argues that its claims sound both in tort and contract because they arise out of "Zurich's obligations in connection with an insurance policy." (Westchester's Mem. in Opp. to Zurich's Mot. to Transfer Venue [20], hereinafter "Pl.'s Opp. to Transfer," at 11, 11 n.6 (noting that while it "addresses the choice of law issue in this brief" it will "incorporate by reference" the

same arguments in its opposition to Zurich's motion to dismiss).) Westchester, therefore, encourages the court to examine the Second Restatement's relevant contacts for both tort and contract actions. (Pl.'s Opp. to Transfer at 13.) In support, Westchester cites *Conagra, Inc. v. Arkwright Mut. Ins. Co.*, 64 F. Supp. 2d 754, 767 (N.D. Ill. 1999) and *Equitable Life Assurance Soc'y v. Swantko*, No. 97 C 8535, 1999 WL 258532 (N.D. Ill. Apr. 19, 1999). (Pl.'s Opp. to Transfer at 12). Those cases are unhelpful, however, as they address disputes between the insured and the insurer—parties in a contractual relationship—rather than the primary and excess insurer.

Zurich emphasizes the absence of privity between the parties here, and argues that Westchester's claims are solely tortious in nature. Illinois courts have held that "a complaint for bad faith sounds in tort, and is subject to all of the requirements of a traditional negligence complaint." *Schal Bovis, Inc. v. Casulty Ins. Co.*, 314 Ill. App. 3d 562, 574, 732 N.E.2d 1082, 1092 (1999) (citing *Adduci v. Vigilant Ins. Co.*, 98 Ill. App. 3d 472, 424 N.E.2d 645 (1981)). Westchester itself cites *York v. Globe Life & Accident Ins. Co.*, 734 F. Supp. 340 (C.D. Ill. 1990) (Pl.'s Opp. to Transfer at 12), where the court unequivocally stated that Illinois choice of law rules for contract cases are "not particularly helpful" in a case alleging bad faith in handling an insurance claim because such allegations state a "tort claim alleging a breach of duty of good faith." *York*, 734 F. Supp. at 341. As discussed below, the court concludes that Westchester's claim against Zurich arises, if at all, under the doctrine of equitable subrogation. Although such an equitable claim does not fall neatly into either tort or contract law, the court concludes that the "relevant contacts" test for tort claims is most appropriate.

  2.  "Most Significant Relationship" Test

The "most significant relationship" test ordinarily calls for application of "the law of the jurisdiction in which the tort occurred (that is, the *lex loci delicti*)." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010) (citing *Townsend*, 227 Ill.2d at 155–56, 879 N.E.2d at 898–99). There is no tort without injury, and the tort, therefore, occurs in the place

5

where the injury was inflicted. *Robinson,* 615 F.3d at 865. For a tort that occurred outside the state of Illinois, the state where the tort occurs governs the action "unless Illinois has a *more* significant relationship with the occurrence and with the parties." *Townsend,* 227 Ill. 2d at 163, 879 N.E.2d at 903 (emphasis in original) (quoting *Ingersoll v. Klein,* 46 Ill. 2d 42, 45, 262 N.E.2d 593, 595 (1970)).

Similar to this case, in *ACE American Ins. Co. v. Sandberg, Phoenix & Von Gontard, PC.,* 900 F.Supp.2d 887 (S.D. Ill. 2012) two excess insurers alleged that their primary insurer "botched the defense" of an underlying malpractice action, leaving the excess carriers on the hook for an inflated settlement amount. Over defendants' objection, the district court concluded that Illinois was the state with the most significant relationship to the parties' dispute: Plaintiff's injury arose from a payment required by an Illinois court; the conduct causing the underlying injury (the malpractice) took place in Illinois; and the relationship between the insurers and counsel began when the insured was sued in Illinois and retained counsel in this state to represent it. 900 F. Supp. 2d at 896–897 (citing *Washburn v. Soper,* 319 F.3d 338, 343 (8th Cir. 2003) and *David B. Lilly Co., Inc. v. Fisher,* 18 F.3d 1112, 1120 (3rd Cir.1994)).

The argument Westchester makes here is akin to the one rejected in *ACE American*: that for choice-of-law purposes, the state in which the underlying litigation is conducted can be ignored when the litigation has connections to other states as well. Zurich's principal place of business is Illinois, Westchester notes, and some decisions regarding the California litigation may have been made here. As in *ACE American*, however, the alleged injury arose out of the judgment entered in the underlying California lawsuit and was a result of the manner in which the litigation was resolved. But unlike *ACE American*, where the underlying lawsuit was filed in Illinois, in this case, the lawsuit that allegedly generated injury to Westchester took place in California. The "relationship" between Zurich and Westchester began at the time that the California state judge ordered Paschen to pay an amount in excess of Zurich's policy limits.

Westchester's status as a Pennsylvania corporation and Zurich's as an Illinois corporation are insufficient to outweigh the factors in favor of California.

Section 6 of the Second Restatement of Conflict of Laws does not suggest a different result. California has an interest in adjudicating disputes that arise out of the orders given by its state court judges, meaning that the needs of the interstate system and policies of the forum are furthered by the application of California law. Westchester issues policies to businesses throughout the country, and it cannot reasonably expect that its transactions will not be governed by the law of a state in which one of its insureds is doing business. Finally, Illinois policy is not furthered by allowing a non-resident plaintiff to sue a resident defendant over circumstances that occurred out of state. The court concludes that California law is applicable.

### B.     12(b)(6) Analysis

Under Rule 12(b)(6), a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The complaint is read "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the non-movant's] favor." *EEOC v. United Airlines, Inc.,* 693 F.3d 760, 761–62 (7th Cir. 2012). The court evaluates Westchester's claims under these standards.

Zurich argues that Westchester's claims depend on the existence of a duty running from primary insurers to excess insurers—a duty that, according to Zurich, does not exist under California law. *Commercial Union,* 26 Cal. 3d at 918, 610 P.2d at 1041. Zurich is correct that the cases cited by Westchester involve claims that an insurer has breached the duty owed to its own insured (not to an excess insurer) to settle within policy limits. (*See* Westchester's Mem. in Opp. to Def.'s Mot. to Dismiss [21], hereinafter "Pl.'s Opp. to Def.'s Mot. to Dismiss," at 12-13.) In some circumstances, however, California courts have recognized that an excess carrier may

claim a right of equitable subrogation to the rights owed by the primary insurer to the insured. Thus, as the court in *Commercial Union* recognized, under the doctrine of equitable subrogation, an "excess carrier may maintain an action against the primary carrier for (wrongful) refusal to settle within the latter's policy limits." 26 Cal. 3d at 917–18; 610 P.2d at 1041. Drawing all reasonable inferences in Westchester's favor, its allegations suggest such a claim here.[3]

"Any cause of action which the excess insurer has against the primary must come by way of subrogation and is conditioned upon its meeting the requirements of equitable subrogation under California law." *Peter v. Travelers Ins. Co.*, 375 F. Supp. 1347, 1350 (C.D. Cal. 1974). California courts have set forth the elements for equitable subrogation as follows:

> (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Am. States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 202 Cal. App. 4th 692, 702, 135 Cal. Rptr. 3d 177, 184 (2011) (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1292, 77 Cal. Rptr. 2d 296, 302–303 (1998).) These eight factors may be met here: Westchester is claiming that Zurich was legally responsible for Paschen's loss, and that Westchester, suffered as a result of Zurich's failure to settle in good faith. Westchester itself was not involved in the settlement or litigation, and therefore is not primarily liable for the loss.

---

[3] Westchester's complaint does not actually use the term equitable subrogation, but the court is called upon to assess "the factual allegations in the complaint, and not the legal labels a plaintiff uses." *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 (7th Cir. 2009).

(Compl. ¶¶ 15, 16.) Westchester has indemnified Paschen for the costs beyond Zurich's policy limits, a liquidated sum for which Paschen would otherwise be responsible, and which allegedly arose from Zurich's mishandling of settlement negotiations. (Compl. ¶¶ 39-40.) Paschen, the insured, would be entitled to bring a claim against its primary insurer for failure to settle in good faith. *Commercial Union*, 26 Cal. 3d at 917–18, 610 P.2d at 241. The only remaining issue is whether Westchester has sufficiently alleged that Paschen failed to settle in good faith.

In *Travelers Indemnity of Connecticut v. Arch Specialty Ins. Co.*, No. 2:11–CV–1601–JAM–CKD, 2012 WL 3249511 (E.D. Cal. Aug. 7, 2012), a primary insurer sought a declaratory judgment that it had no liability to the excess carrier for failing to settle an underlying case within the primary policy limits. The federal court explained that "[u]nder California subrogation law, an insurer considering a settlement offer within its coverage limits must consider the offer as though it would be liable for the full amount of any possible judgment." *Id.* at *2. Similarly, in an action brought by an injured party who has subrogation rights against her tortfeasor's insurer, the California Supreme Court observed that an insurer has a duty "to settle a claim against its insured within policy limits whenever there is a substantial likelihood of a recovery in excess of those limits." *Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau,* 15 Cal. 3d 9, 15–16, 538 P.2d 744, 747 (1975). Westchester's allegations support the inference that Zurich's attorneys could have settled the claims against Paschen in mediation for the same amount that BPI ultimately did: $375,000. (Compl. ¶ 28.) Even including the amount awarded to the co-defendant on its cross-complaint, $411,843.03, the combined settlements would have fallen comfortably within Zurich's policy limits.

An offer of settlement within policy limits is reasonable when there is "a substantial likelihood that a jury verdict will be beyond those limits." *Am. Alt. Ins. Corp. v. Hudson Specialty Ins. Co.,* 938 F. Supp. 2d 908, 918 (C.D. Cal. 2013) (quoting *Highlands Ins. Co. v. Cont'l Cas. Co.,* 64 F.3d 514, 517 (9th Cir.1995) (applying California law)). "The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not

conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment." *Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 518 (9th Cir. 1995) (quoting *Crisci v. Sec. Ins. Co. of New Haven, Ct.*, 66 Cal. 2d 425, 431, 58 Cal. Rptr. 13, 17 (1967)). In this case, the $1.6 million jury verdict does not resolve the issue; whether Zurich's failure to accept the settlement demand was unreasonable is a matter for a jury in this case to determine. *See Am. Alternative Ins.*, 938 F. Supp. 2d at 918 (citing *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.*, 5 Cal. App. 4th 1445, 1454, 7 Cal. Rptr. 2d 513, 514 (1992)). At this stage, however, accepting Westchester's well-pleaded allegations as true, the court concludes it has pleaded a claim of equitable subrogation.

**II.     Motion to Transfer Venue**

Having denied its Rule 12(b)(6) motion, the court turns to Zurich's motion to transfer this case to the Central District of California. A district court may transfer any civil action "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A transfer under § 1404(a) is proper if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) (citations omitted). The movant bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

The parties agree that the first prong of this test is met. Venue is proper in Illinois, were Zurich is located. Zurich notes that California is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" and that venue is proper there as well. (Zurich's Mem. in Supp. of Mot. to Transfer [15], hereinafter "Def.'s Mot. to Transfer," at 7) (citing 28 U.S.C. § 1391(b)(2).) In considering the remaining prongs of the test, the court weighs

both the private interests of the parties and the interest of the court. *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999).

### A. Private Interest Factors

Private interests relevant to transfer include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of witnesses; and (5) the convenience of the parties. *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). Though the first of these factors (plaintiff's chosen forum) ordinarily carries substantial weight, it is less significant in a case such as this one, where the plaintiff is not located in the chosen forum. *See Guignard v. Nat'l R.R. Passenger Corp.*, No. 11 C 124, 2012 WL 1108242 (N.D. Ill. Apr. 1, 2012) (quoting *Childress v. Ford Motor Co.*, No. 03 C 3656, 2003 WL 23518380 at *2 (N.D. Ill. Dec.17, 2003)). The second factor—situs of material events—weighs in favor of California, where Kelly's injury and the resulting lawsuit, took place. (Compl. ¶¶ 10, 14.) Furthermore, Pollard handled the settlement negotiations and defended the case there. (Compl. ¶ 15.)

Courts next consider the availability and access to witnesses, as well as access to sources of proof or evidence. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The convenience of witnesses is often viewed as the most important factor in this evaluation. *Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998) (citing *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). Illinois is, of course, a convenient forum for Zurich, which is located here, but Zurich is correct that Westchester will be unable to prove its case by relying solely on evidence provided by Paschen, Zurich, and Pollard. (*See* Pl.'s Opp. to Transfer at 9.) Those parties represent just one side of the settlement equation; testimony from the other parties' representatives will be necessary for a comprehensive understanding of the negotiations. The majority of non-party witnesses are located in California. Critically, documents reflecting settlement negotiations are likely to be in the possession of Pollard and opposing counsel, all located in California, as well. (Def.'s Mot. to

Transfer at 2–3.) Notably, Plaintiff Westchester itself is a Pennsylvania corporation; this litigation requires it to travel regardless whether the transfer motion is granted. As it is Zurich, an Illinois resident, who has filed the motion, the court concludes that private interests support transfer.

B.   **Public Interest Factors**

In examining the "interests of justice" under § 1404(a), courts examine certain public interest factors that facilitate the efficient functioning of the courts, including: (1) speed at which the case will proceed to trial; (2) the court's familiarity with applicable law; and (3) the public interest in having a case resolved in a particular forum. *Coffey*, 796 F.2d at 221.

Westchester appears to concede that the case will proceed more quickly to trial in California than it will here. (Pl.'s Opp. to Transfer at 10, 11.) Westchester does, however, refer the court to *Coronet Ins. Co. v. Washburn*, 201 Ill. App. 3d 633, 637–638, 558 N.E.2d 1307, 1310 (1990) and *Global Décor, Inc. v. Cincinnati Ins. Co.*, No. 11-2602-JST (FMOx), 2011 WL 2437236 at *2 (C.D. Cal. June 16, 2011) in support of its contention that Illinois has a policy in favor of adjudicating, in Illinois, disputes involving contracts that are entered into here. (Pl.'s Opp. to Transfer at 13-15.) As explained earlier, however, this is an equitable subrogation case arising out of events that took place in California. Therefore, California is "closer to the action"; public policy favors transfer to that venue. *Berol Corp. v. BIC Corp.*, No. 02 C 559, 2002 WL 1466829 at *5 (N.D. Ill. July 8, 2002). Finally, because California law applies, a transfer would insure that a court more familiar with applicable law will be deciding the case.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [11] is denied. Defendant's motion to transfer venue [14] is granted and this case is transferred to the United States District Court for the Central District of California.

ENTER:

Dated:     March 12, 2014

_____
REBECCA R. PALLMEYER
United States District Judge